IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02549–EWN–OES

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

904 TORO CANYON ROAD, SANTA BARBARA, CALIFORNIA,

    Defendant.

---

### ORDER AND MEMORANDUM OF DECISION

---

This is an *in rem* civil forfeiture case. Plaintiff United States of America seeks forfeiture of Defendant 904 Toro Canyon Road, Santa Barbara, California ("Defendant property") pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981 for alleged violations of the narcotics provision of 21 U.S.C. § 801, the money laundering provisions of 18 U.S.C. §§ 1956 and 1957, and the wire fraud provisions of 18 U.S.C. § 1343. This matter is before the court on Claimants Leslie Schiff/Buxton's and Paco Buxton's "Motion to Dismiss Pursuant to Rule 12(b), F.R.Civ.P. [sic] (Statute of Limitations)," filed June 14, 2005. Jurisdiction is based on 28 U.S.C. §§ 1345 and 1355.

**FACTS**

*1.    Factual Background*

The following facts are taken from Plaintiff's verified complaint for forfeiture *in rem* and the parties' submissions with respect to the motion to dismiss. Plaintiff alleges that beginning in the 1970s through the present, Richard Buxton, John Knock, Claude Duboc, and Albert Madrid have been leaders of an organization that has operated a multi-ton marijuana/hashish network to transport and distribute marijuana/hashish, primarily in the United States and Canada. (Pl.'s Verified Compl. for Forfeiture *In Rem* ¶ 4 [filed Dec. 13, 2004] [hereinafter "Compl."].) Plaintiff charged Richard Buxton in the District of Colorado with drug-related offenses, including conspiracy to possess with intent to distribute marijuana/hashish, conspiracy to import marijuana/hashish, and money laundering. (*Id.* ¶ 5.) Plaintiff asserts that from 1980 through the present, Richard Buxton has not had any legal employment and all of the assets he has acquired, transferred, and deposited, including Defendant property, were obtained using the proceeds of his illegal drug trafficking. (*Id.*)

In 1989, the "Buxton drug organization" purchased four trucks in Boulder, Colorado and used them to transport hashish from Vancouver, Canada to Montreal, Canada. (*Id.* ¶ 6.) Plaintiff alleges that in 1992, the leaders of the drug organization, including Duboc and Madrid, met in Colorado to discuss and plan the drug operations. (*Id.*) Following this meeting, four million dollars in drug proceeds were transferred from accounts in Singapore to organization members in Vancouver, Canada and British Columbia, Canada. (*Id.*)

Subsequently, Knock, Duboc, and Madrid were convicted on drug-related offenses in the Northen District of Florida. (*Id.* ¶ 7.) On January 30, 2001, the court sentenced Knock to two life terms in prison. (*Id.*) Additionally, based on a finding that the Buxton organization had distributed approximately four hundred tons of marijuana/hashish, the court fined Knock $1.411 billion and ordered $438 million forfeited as drug proceeds. (*Id.*) The court sentenced Duboc and Madrid to one term of life in prison arising from their roles as principals in a marijuana trafficking conspiracy. (*Id.*) The court fined Duboc five million dollars and ordered him to forfeit one-hundred million dollars. (*Id.*) The court fined Madrid four million dollars and forfeited $8.8 million.

On June 10, 1999, Plaintiff indicted Richard Buxton. (Motion to Dismiss Pursuant to Rule 12[b], F.R.Civ.P. [sic] [Statute of Limitations] at 2 [filed June 14, 2005] [hereinafter "Claimants' Br."], Ex. A [Superseding Indictment].) Plaintiff charged Richard Buxton with conspiracy to distribute and to possess with intent to distribute marijuana and hashish and conspiracy to commit money laundering. (*Id.*) Plaintiff alleges that these crimes occurred between 1986 and 1995. (*Id.*) Richard Buxton has been a fugitive since his Colorado indictment, and an arrest warrant is currently outstanding. (Compl. ¶ 8; Claimants' Br. at 2.)

Plaintiff asserts that while Richard Buxton was running his drug trafficking operations, he purchased Defendant property with illegal drug proceeds. (Compl. ¶¶ 11–12.) Plaintiff contends that in June 1989, Richard Buxton opened account number 191–440–986 at the Montecito Bank and Trust in Santa Barbara, California. (*Id.* ¶ 12.) Plaintiff asserts that Richard Buxton has maintained the account in his name through the present, including the entire time he has been a

fugitive. (*Id.*) Plaintiff alleges that the records from this bank account reveal that the account has been active, "with deposits in [Richard] Buxton's name and charges debited bearing the signature of 'Richard Buxton' and payable to the Montecito Waste District and South California Edison, believed to be utility payments on [D]efendant . . . [p]roperty." (*Id.* ¶ 13.)

### *2.  Procedural History*

On December 13, 2004, Plaintiff filed a verified complaint for forfeiture *in rem* in this court against Defendant property. (Compl.) Plaintiff alleged that Defendant property was involved in narcotics, money laundering, and wire fraud provisions. (*Id.* ¶ 1.) On December 13, 2004, Plaintiff filed a notice of *lis pendens*. (Notice of *Lis Pendens* [filed Dec. 13, 2004].) On December 13, 2004, Plaintiff filed an application for writ of entry. (Application for Writ of Entry [filed Dec. 13, 2004].)

On March 7, 2005, Plaintiff filed a notice of complaint for forfeiture against real property. (Notice of Compl. for Forfeiture Against Real Property [filed Mar. 7, 2005].) On April 28, 2005, Plaintiff served a copy of the complaint on the tenants of Defendant property. (Claimants' Br. at 2.) On May 26, 2005, Claimants filed verified notices of claim to Defendant property. (Notices of Verified Claim [May 26, 2005].) Claimant Schiff/Buxton claims an ownership interest in Defendant property through the community property laws in California and a revocable trust. (Claimants' Br. at 2.) Claimant Buxton claims an ownership and possessory interest in the property. (*Id.*) On August 12, 2005, Plaintiff filed a response to Claimants' motion to dismiss. (United States' Resp. in Opp'n to Mot. to Dismiss [filed Aug. 12, 2005] [hereinafter "Pl.'s Resp."].) On September 2, 2005, Claimants filed a reply in support of their motion. (Reply to

Gov't's Resp. to Claimants' Mot. to Dismiss Pursuant to Rule 12 (b), F.R.Civ.P. [sic] [Statute of Limitations] [filed Sept. 2, 2005] [hereinafter "Claimants' Reply"].)

## ANALYSIS

### 1. *Standard of Review*

For the purposes of a motion to dismiss under Rule 12(b)(6), a court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir.1999]).

### 2. *Proprietary Nature of Motion to Dismiss*

Plaintiff asserts that Claimants' motion to dismiss is inappropriate because Claimants have not filed an answer. (Pl.'s Resp. at 2–3.) Specifically, Plaintiff alleges that "[t]he [C]laimants have not filed the Answers required by 18 U.S.C. § 983(a)(4)(A) and Supplemental Rules for Certain Admiralty and Maritime Claims C(6). Instead, [Claimants] have now filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b), alleging a violation of the Statute of Limitations." (*Id.* at 2.) Plaintiff contends that Rule 12(b) "offers no authority for [C]laimants to seek dismissal at this time." (*Id.* at 3.)

"Parties to civil forfeiture proceedings are servants of two procedural masters:" (1) the Supplemental Rules specifically devised for admiralty and *in rem* proceedings; and (2) the Federal Rules of Civil Procedure. *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 149 (3rd Cir. 2003). The balance between the two is struck in favor of the Supplemental Rules, which always apply to civil forfeiture proceedings. *Id.* The Federal Rules of Civil Procedure apply to *in rem* proceedings, but only to the extent they are not "inconsistent with" the Supplemental Rules. *Id.* Supplemental Rule C(6) provides in relevant part that:

> [t]he claimant of property that is the subject of an action [*in rem*] shall file a claim within [ten] days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within [twenty] days after the filing of the claim.

Supp. R. C(6). Plaintiff asserts that Federal Rule of Civil Procedure 12(b)'s procedure for motions in lieu of an answer is inconsistent with Supplemental Rule C(6)'s pleading procedure. (Pl.'s Resp. at 3.) Plaintiff does not offer any support for this proposition. I am not persuaded that Supplemental Rule C(6) is inconsistent with Federal Rule of Civil Procedure 12(b), and Plaintiff has not produced any evidence to the contrary. As the Third Circuit noted in *$8,221,877.16 in United States Currency*:

> [c]ivil Rule 12(b) motions are intended to 'streamline [] litigation by dispensing with needless discovery and fact-finding.' Forfeiture proceedings are no different in this regard. Defenses such as failure to adhere to the statute of limitations can be litigated without a great deal of discovery. If a complaint should be dismissed, the government should not be able to prolong dismissal . . . . Motions under Rule 12(b) provide litigants with a fundamental procedural safeguard and prevent burdensome discovery in meritless cases. . . . [There is] no evidence that Supplemental Rule C(6) was intended to pull the rug out from under forfeiture claimants by abolishing the time-honored protections provided in Rule 12(b).

*$8,221,877.16*, 330 F.3d at 155–56 (internal citations omitted).  Similarly, other federal courts have entertained motions to dismiss prior to the claimants' serving an answer.  *See United States v. Orienta Park Second*, 114 F.3d 1199, *1 (10th Cir. June 10, 1997) (table) (affirming the district court's order granting the United States' motion to dismiss); *United States v. 2751 Peyton Woods Trial*, 66 F.3d 1164, 1167 (11th Cir. 1995) (remanding for consideration of claimant's motion to dismiss); *United States v. Funds in the Amount of $29,266.00*, 96 F. Supp. 2d 806 (N.D. Ill. 2000) (denying motion to dismiss); *United States v. 657 Acres of Land*, 978 F. Supp. 999 (D. Wyo. 1997) (same); *United States v. Funds in the Amount of $9,800*, 952 F. Supp. 1254 (N.D. Ill. 1996) (dismissing complaint for failure to state a claim).  Accordingly, Claimants' motion to dismiss is appropriate at this stage and I evaluate the merits below.

### 3.     *Claimants' Article III Standing*

Plaintiff contends that Claimants lack standing to challenge the forfeiture action because they do not have any interest in Defendant property.  (Pl.'s Resp. at 4–7.)  Specifically, Plaintiff alleges that "since Richard Buxton purchased and maintain [sic] Defendant property with his only income, drug proceeds, all of Richard Buxton's interest in Defendant property vested in the [Plaintiff] at the time of the commission of the drug crimes . . . ."  (*Id.* at 5.)  Claimants allege that they each have an interest in Defendant property.  (Claimants' Reply at 5.)  Specifically, Claimants allege that Claimant Schiff/Buxton "claims an interest in the property through California's marital community property laws and by virtue of a trust agreement."  (*Id.* at 5.)  Claimants allege that Claimant Buxton has standing because he is in actual possession of Defendant property and has a

twenty-five percent interest in any proceeds if Defendant property is ever sold.  (*Id.* at 4.)  Defendant Property is titled solely in Richard Buxton's name.  (Pl.'s Resp., Ex. 1 [Grant Deed].)

Article III standing must be determined as a threshold matter in every federal case.  *United States v. Real Property Located at 5208 Los Francisco Way, Los Angeles, CA.*, 385 F.3d 1187, 1191 (9th Cir. 2004).  Lack of standing precludes a court from exercising subject matter jurisdiction over a matter.  *United States v. One Hundred Thirty-Eight Thousand, Three Hundred Eighty-One Dollard in U.S. Currency ($138,381.00), Seized on October 24, 1996, at John F. Kennedy Int'l Airport From Jose M. Agudelo-Garcia*, 240 F. Supp. 2d 220, 227 (E.D.N.Y. 2003).  In a forfeiture action, determination of whether a claimant has standing turns upon whether the claimant has a sufficient interest in the property to create a case or controversy.  *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  "The claimant's burden under Article III is not a heavy one; the claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake."  *Real Property Located at 5208 Los Francisco Way*, 385 F.3d at 1191.  Ownership interest is determined under the law of the state in which the purported interest arose, here, California.  *United States v. Ranch Located in Young, AZ.*, 50 F.3d 630, 632 (9th Cir. 1995).  I evaluate each Claimant's purported interest below.

### *a. Claimant Schiff/Buxton*

Claimant Schiff/Buxton asserts that she has an interest in Defendant property "through California's marital community property laws and by virtue of a trust agreement."  (Claimants' Reply at 5.)  Claimant Schiff/Buxton alleges that by virtue of her marriage to Richard Buxton, she

has an ownership interest in Defendant property. (*Id.*) Alternatively, Claimant Schiff/Buxton asserts that "[b]y trust agreement . . . executed October 1, 1991, by Richard Buxton and [Claimant Schiff] Buxton, the property was placed in trust with both spouses as beneficiaries." (*Id.* at 6.) I evaluate Claimant Schiff/Buxton's assertions in turn.

First, Claimant Schiff/Buxton alleges that she has an interest in the property by virtue of the California community property laws. (Claimant's Br. at 3.) Claimant Schiff/Buxton alleges that she and "Richard Buxton were married in 1982. Richard Buxton acquired the property from his parents in 1989 and perfected it in 1990." (Claimants' Reply at 6.) In California, there is a presumption, that except as otherwise provided by statute, "all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code § 760 (2004). Section 760 states the basic rule that all property acquired during marriage is community property unless it comes within a specified exception. The major exceptions to the basic community property rules are those relating to separate property. *See Id.* §§ 130, 770, 771, 772, 781. Separate property of a married person includes all of the following: "(1) all property owned by the person before marriage. (2) All property acquired by the person after marriage by gift, bequest, devise, or descent. (3) The rents, issues, and profits of the property described in this section." *Id.* § 770. Further, separate property does not change its character as a result of marriage or by mere use in the marital relationship. *Mears v. Mears*, 4 Cal. Rptr. 618, 627–28 (1st Dist. Ct. App. 1960), *overruled on other grounds*, *See v. See*, 415 P.2d 776, 781 (Cal. 1968).

I will assume for purposes of this argument that on January 11, 1989, Richard Buxton received title to Defendant property via a grant deed executed by his parents, B.L. Willeford and Christine Willeford.[1] (Pl.'s Resp., Ex. 1 [Grant Deed].) The deed purports to grant four parcels of land to "RICHARD BUXTON, a married man as his sole and separate property." (*Id.*) Thus, despite the fact that Claimant Schiff/Buxton and Richard Buxton were married at the time, Richard Buxton received his interest in Defendant property as separate property. Accordingly, even assuming that Richard Buxton received this property from his parents rather than from proceeds of illegal activity, Claimant Schiff/Buxton did not receive any interest in Defendant property. Richard Buxton and Claimant Schiff/Buxton's status as a married couple does not automatically transmute Richard Buxton's separate property to community property. *See Marriage of Starkman v. Starkman*, 28 Cal. Rptr. 3d 639, 664 (2nd Dist. Ct. App. 2005) (holding that a transmutation of separate property to community property is not valid unless made in writing by an express declaration). Claimant Schiff/Buxton does not offer any arguments that counsel against this result nor does she address the fact that Richard Buxton purportedly received the property as his separate property.

Alternatively, Claimant Schiff/Buxton alleges that she has standing because Defendant "property was placed in trust with both spouses as beneficiaries." (Claimants' Reply at 6.) On October 1, 1991, Richard Buxton and Claimant Schiff/Buxton executed a revocable trust

---

[1] I do not make any decision at this stage of the litigation regarding whether Richard Buxton actually received Defendant property via grant deed from his parents. Plaintiff asserts that Richard Buxton purchased and maintained Defendant property with proceeds from illegal drug transactions. (Compl. ¶¶ 11–14.)

agreement entitled "Buxton Revocable Trust."  (*Id.*, Ex. C [Trust Agreement].)  The trust agreement was never recorded.  (*Id.* at 5.)  On October 3, 1991, an attorney sent Claimant Schiff/Buxton a cover letter with the trust documents attached.  (*Id.*, Ex. C [Cover Letter and Trust Agreement].)  The trust agreement was signed and authorized by a notary public.  (*Id.*, Ex. C at 24–25 [Trust Agreement].)  The cover letter stated in relevant part as follows:

> Enclosed for your records is a duplicate original of the Buxton Revocable Trust dated October 1, 1991.  The documents have all been properly executed and notarized.  Now that the trust has been established, it must be funded by transferring assets into it.  I have reviewed the situation with Richard and we should begin the implementation immediately upon his return.

(*Id.*, Ex. C [Cover Letter].)  Attached to the trust agreement, following the signature and notary pages, is a document entitled "Schedule A."  (*Id.*, Ex. C [Schedule A to Trust Agreement].)  Unlike the actual trust document, Schedule A is stamped as a "DRAFT," and is not signed.[2]  (*Id.*)

---

[2] As stated above, pages twenty-four and twenty-five of the trust document are signed and notarized.  (*Id.*, Ex. C at 24–25 [Trust Agreement].)  There is a handwritten notation on the top right corner of these pages noting the pages as thirty and thirty-one.  (*Id.*)  Schedule A has a hand-written number at the top right corner noting the pages as thirty-two and thirty-three.  (*Id.*, Ex. C [Schedule A].)  Again, Schedule A is stamped as a "DRAFT" and is unsigned.  (*Id.*)  Curiously, following Schedule A, Claimants attached a signature and notary page dated October 1, 1991.  (*Id.*)  There is a handwritten page notation at the top right corner of the page delineating the page number as thirty-four, as if to indicate that this page would follow Schedule A.  (*Id.*)

A closer inspection reveals that the bottom of this signature page, in print, shows that the page is in fact page twenty-five of the trust document.  (*Id.*)  This is the signature and notary page of the actual trust document, not Schedule A.  Moreover, the October 3, 1991 cover letter reiterates to Claimant Schiff/Buxton that the trust had not been funded as of that date.  (*Id.*, Ex. C [Cover Letter to Trust Agreement].)  Irrespective of Claimants' motivation, or lack thereof, in attaching an extra signature page after Schedule A, I will not consider the signature page to be an affirmation of Schedule A.

-11-

Schedule A lists Defendant property as "Principal Residence located at 904 Toro Canyon Road, Santa Barbara." (*Id.*) There is no legal description. (*Id.*)

Based on the foregoing evidence presented by Claimant Schiff/Buxton, the trust was never funded. Claimant Schiff/Buxton has the burden to show her interest in Defendant property. *See Real Property Located at 5208 Los Francisco Way*, 385 F.3d at 1191. Claimant Schiff/Buxton has not produced any evidence that Defendant property was part of the res of the trust. In fact, the October 3, 1991, cover letter highlights the fact that the trust was not funded. (*Id.*, Ex. C [Cover Letter].) Accordingly, Claimant Schiff/Buxton's allegation that she has an interest in Defendant Property because she is a beneficiary of the Buxton Revocable Trust fails because Claimant Schiff/Buxton has not asserted any evidence that Defendant property is part of the res of the trust. Accordingly, Claimant Schiff/Buxton has not demonstrated that she has standing.

### b. *Claimant Buxton*

Claimant Buxton alleges that he has standing because he has legally cognizable possessory and ownership interests in Defendant property. (Claimants' Reply at 4.) Claimant Buxton alleges that he and Richard Buxton entered into a joint venture whereby Claimant Buxton would tend the grounds of Defendant property in exchange for a twenty-five percent interest in the sale of the property if it was ever sold. (*Id.*, Ex. A ¶ 8 [Decl. of Claimant Buxton].) Additionally, Claimant Buxton alleges that he has lived and worked on the property for the past eight years as the property manager. (*Id.*)

As stated above, a claimant's burden under Article III is not a heavy one. *See Real Property Located at 5208 Los Francisco Way*, 385 F.3d at 1191. "The claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *Id.* (citing *One Lincoln Navigator 1998*, 328 F.3d at 1013). Here, Claimant Buxton has demonstrated a colorable interest in Defendant property because he is in actual possession of the property. (Claimants' Reply, Ex. A ¶ 8 [Decl. of Claimant Buxton].) Accordingly, Claimant Buxton has demonstrated that he has standing.

### *4.   Statute of Limitations*

Claimants contend that Plaintiff's complaint was not timely filed and "is time barred by the statute of limitations on civil forfeiture actions." (Claimants' Br. at 5.) Claimants allege that "[n]either [Claimant] Buxton nor [Claimant Schiff] Buxton has been absent from the United States for any significant period since June, 1999 [sic]. Nor has [D]efendant property been removed from the United States or concealed in any way." (*Id.* at 4–5.) Plaintiff contends that the statute of limitations is tolled because Richard Buxton is a fugitive and absent from the United States. (Pl.'s Resp. at 7.)

Title 19 U.S.C. § 1621 sets forth the statute of limitations for forfeiture actions:

[n]o suit or action to recover any duty under section 1592(d), 1593a(d) of this title, or any pecuniary penalty for forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within [two] years after the time when the involvement of the property in the alleged offense was discovered, whichever was later; except that
    (1) in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action (including a suit or action for restoration of lawful duties under subsection [d] of such sections) may be instituted unless commenced within [five]

>    years after the date of the alleged violation, or if such violation arises out of fraud,
>    within [five] years after the date of discovery of fraud, and
>        (2) the time of the absence from the United States of the person subject to
>    the penalty or forfeiture, or of any concealment or absence of the property, shall
>    not be reckoned within the [five] year period of limitation.

19 U.S.C. § 1621 (2005). The statute of limitations is tolled any time a person "subject to the penalty or forfeiture" has been continually absent. *Id.*; *see United States v. 657 Acres of Land, More or Less, In Park County, WY.*, 978 F. Supp. 999, 1004 (D. Wyo. 1997). "During the time that a person is a fugitive from justice any applicable statute of limitations is tolled." *657 Acres of Land, More or Less, In Park County, Wyoming*, 978 F. Supp. at 1004 (citing *United States v. Morgan*, 922 F.2d 1495, 1497 [10th Cir. 1991]).

Here, the parties do not dispute that Richard Buxton is a fugitive. (Claimants' Reply at 8; Pl.'s Resp. at 7–8.) Even assuming Claimant Buxton has an interest in Defendant property, this interest is at most twenty-five percent. (Claimants' Reply at 4–5, Ex. A [Decl. of Claimant Buxton].) Richard Buxton holds the remainder of the interest in Defendant property. (Pl.'s Resp., Ex. 1 [Grant Deed].) Therefore, the statute of limitations must be tolled with respect to Richard Buxton's interest.

Plaintiff is more than a creditor in this action. *United States v. The South 23.19 Acres of Land*, 694 F. Supp. 1252, 1254 (E.D. La. 1988). Accordingly, if Plaintiff prevails, all of Richard Buxton's right, title, and interest in Defendant property vested in Plaintiff upon commission of the act which gave rise to this forfeiture proceeding. 21 U.S.C. § 881(h); *see also The South 23.19 Acres of Land*, 694 F. Supp. at 1254 (holding that the government is entitled to sell the defendant property and split the proceeds with any other claimants holding a valid interest in the property).

"The purpose of this forfeiture action is only to perfect that title." *The South 23.19 Acres of Land*, 694 F. Supp. at 1254. Thus, Plaintiff's action, with respect to Richard Buxton's interest in Defendant property, is tolled and is not barred by the five year statute of limitations period provided for in 19 U.S.C. § 1621.

*5.    Conclusions*

Based on the foregoing it is therefore ORDERED that:

1. Claimants' motion to dismiss (# 20) is DENIED.

2. Claimants' motion for hearing/conference (#34) is DENIED.

Dated this 5th day of January, 2006

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge